May it please the Court, I am Aneesha Jones and I represent the appellate Jackie Davidson. I would like to reserve three minutes for rebuttal. Jackie Davidson defended himself against persons unknown and was rewarded with a district court that usurped the authority of the jury and prohibited him from asserting self-defense. Its pre-trial ruling not only hamstringed Davidson's defense and dictated the decision and direction of his trial, but it all but cemented his conviction. The main facts, no matter who tells them, are the same. A dark SUV drove down a private road. A man, Davidson, was in the middle of that road. After turning around, the SUV drove directly toward Davidson, who was still in the middle of the road. Davidson could not see into the vehicle because of its dark tinted windows. Once the vehicle passed, Davidson shot the SUV with a shotgun and into the air with a pistol. No one disputes these facts. What's missing is context. What did he know? What did he intend? Because what he knew and what he intended informs whether he met the requirements of the self-defense justification, which requires that he prove a reasonable belief in imminent danger. Counsel, I understand you're focusing your argument on the inability to present your self-defense defense. Yes, Your Honor. But I wondered if there was anything that you were not allowed to present in the defense's case that limited the jury's ability just to look at intent generally. Yes, Your Honor. The things that were kept out by the judge went both to the self-defense and intent. It's kind of hard to separate those out. So the court allowed evidence of a very general manner of an encounter that happened two days prior to the event. The court allowed evidence that there was an encounter, that there was a gun involved. However, it left out any specificity as to what happened in that event. Mr. Davis's perspective and how he felt about that, it excluded his statement, which included details that went to his state of mind and whether he intended to shoot at the officers. And so are those two separate arguments then? So in your view, the district court prohibited testimony and evidence related not just to self-defense, but also just in whether the government met its burden  Yes, Your Honor. And when you say they overlap, is there any daylight between the evidence? In other words, would you say, okay, there's some evidence that if was excluded, could be excluded as to the self-defense. But hey, this stuff really goes to just his intent on whether he actually committed the offense of assault. Well, what was kept out was the specifics of the previous encounter, the status of the road as private, and evidence of other criminal and bizarre occurrences that happened on the property. I would assert that the incident itself goes to both self-defense and intent. I would also assert that the private road goes to both. When you say intent, intent to what? Intent to shoot at the officers. The issue that everyone accepts here is that Mr. Davidson did not know that he was shooting at officers. Because of this event that happened two days prior to this, Mr. Davidson believed that he was shooting at a person he refers to as Omar, who he knew to be a dangerous man and to carry a weapon, which was a brandish during the previous incident. Well, let me ask you, you said the statement was kept out. What exactly was offered and what was excluded? Because a statement of Mr. Davidson would not normally be admissible unless he testified. Mr. Davidson did testify, and the court permitted parts of the statement to be heard. It did not include the full testimony, the full statement, which it didn't allow the full testimony from the statement, in which Mr. Davidson discussed and detailed his fear, who he thought he was. And Agent Bell confirms that throughout this interview, he believes that he is only shooting at Omar, not that he is shooting at federal officers. So your intent argument, is that one directly related to what I'll call your FIOLA argument? Or is there another, I mean, the assault does require that whatever the conduct was done voluntarily and intentionally. So are you saying that you are excluded from offering evidence and testimony relating to that intent or only to the FIOLA intent, which is another issue in your brief? If I understand your question correctly, Your Honor, it's the FIOLA issue, because the- So if, I'm sorry to interrupt, but so if you're arguing intent only as to whether he was, whether the government was required to prove that he knew they were federal officers, that's, if let's say that that was not a winning argument, then you are left with only the self-defense in terms of the, I guess, damage to your ability to present your case? Yes, Your Honor. So on the self-defense, you might have a good argument at the time the car was coming toward him, but how do you get a reasonable imminent danger when the car is driving away from your client? Your Honor, I believe that that does not address the time factor here. So this happened in a matter of moments, not over an extended period of time. So this was not drawn out. The vehicle was coming directly at Mr. Davidson, and it was coming at a speed that was fast enough to where neither officer correctly identified the man in the road initially. Initially, they identified him as someone else in particular. The fact that he shot afterwards does not remove the self-defense we submit, because from Mr. Davidson's perspective, he was just driven at directly by a vehicle, which can be seen as a dangerous weapon, and it is continuing, he believes, in this vehicle is being driven by Omar, who he knows to be dangerous, and to carry a weapon. As everyone admits, he cannot see into the vehicle because of the windows, so he has no way of knowing who is in the vehicle, and he cannot see what is being done in the vehicle. All he knows is this reasonable belief that it's Omar, because from his perspective, this vehicle is the same as the vehicle that he saw two days before with Omar, in which he had an encounter. So two things can be true. The court, in discussing the fact that he shot after the fact, pretty much relied on the fact that Mr. Davidson said that he fired warning shots, but Mr. Davidson also said that he shot to protect himself and his wife, who was at his home. Two things can be true. He can be shooting to presently protect, I can shoot to presently protect myself from whatever I believe might be happening in this moment, and also be warning you off from doing anything further. But that is a jury question. Did the parties discuss the two shootings as different events? In other words, the shot that I think was with the long gun that went toward, kind of hit near the bumper, and then it jammed, and then a small gun was shot in the air. Did the parties separate those as two separate acts, or did everyone just assume that was one series of events? Your Honor, I believe it's treated as one series of events. This is pretty much a split-second decision. Because this is happening in a short period of time, Mr. Davidson is making decisions in split seconds very quickly, and it's not uncommon for people to underestimate what is going on at the time. However, the fact remains that Mr. Davidson, at this point in time, has just been driven by a large vehicle that has now passed him, but he cannot tell what is going on, if it's going to return. And he has a reasonable fear that this is Omar. Mr. Davidson is a guy with a fear of a guy with a gun. But not just a general guy with a gun. He is fearful of a specific man because of a specific incident that happened in a specific place. And we are there again. And you're saying that there were some details that he was not permitted to testify about to let the jury know about the full scope of his concerns about this particular person named Omar that he thought was driving? Yes, Your Honor. Because these details don't come out, the context is missing. The judge decides on his own that he's going to weigh and find credible the facts and determine what the outcome should be, but where these are fact-intensive determinations, reasonableness, and eminence, these were questions for the jury. Now, the jury, we do not assert that had these gone to the jury, he would not have been convicted. The assertion is that regardless of whether he was convicted or not, the judge took the jury's role when it decided these matters before allowing the jury to hear them because the jury could have heard them and gone either way. But there was sufficient evidence to support the burden of production. What relevance is there to the fact that Mr. Davidson arguably instigated the event by standing in the middle of the road with his gun? I mean, if I'm driving down a road and I see somebody standing in the middle with a gun, presumably he's trying to stop the car and I probably would speed by him too. So what relevance is there to the fact that he's the instigator of the incident? Yes, Your Honor. As far as being the initial instigator, when Mr. Davidson is in the middle of the road, the agents testify that at that time the gun is not in there. They do not see any movement with regard to the gun until after they pass. Because the gun is not in there, I would submit that he was not the initial investigator. It was his land, private property, and he was reasonably suspicious of his vehicle and going to investigate why it was here. It was an unmarked, unexpected vehicle, and he was within reason to go to see why it was here and what the purpose was. The agents acknowledged in their own testimony that the road was not what they expected it to be. When they went out for the investigation, I believe that they believed that this was going to be a much more used road, but they both testified that it looked like it was seldomly used by vehicles. It was so unused, this gravel road, that one of the agents initially wanted to cease the investigation for fear of ruining the road. Let me ask this. Let's change the facts a little bit. Let's suggest that the driver is actually Omar, and we're here on a state assault case, so to speak. Do you think he'd get a self-defense instruction when he can't see in the windows, he can't see any gun pointed at him, the car goes past him, and he shoots when, to me, there's no threat at that point, no imminent threat of serious bodily harm to himself? Yes, Your Honor, because there's always the—this comes back to the time factor for Mr. Davidson. This entire incident happens in a matter of moments, and though the court disregards—the district court disregarded— But the threat has to be imminent. It can't be a possibility that it'll turn around or, you know, something like that. It has to be imminent, I think. Yes, Your Honor. Our argument is that imminence being fact intensive is, in this case, subjective to Mr. Davidson, because this car has just driven at him. This whole thing has happened in a matter of—I'm sorry, I'm into my rebuttal time. You can finish it. He has just driven—this car has driven directly at him and has passed him, but he can't see anything in there. But he knows it's—if he knows it's armored, assume it's actually Omar, he knows him to be dangerous, and he knows him to carry a gun because of more than just his previous encounter. So it's reasonable to assume for him to believe that any of these other options could happen, and they could happen in a matter of moments with the exception of the back road reason. Thank you. Thank you. Good morning. May it please the Court. My name is Stephanie Mazzanti, and I represent the United States. Davidson shooting at the back of a vehicle as it's driving away from him is not self-defense, and this Court should affirm. First, the District Court correctly precluded the self-defense at the initial stages of the proceeding where the undisputed facts were that Jackie Davidson shot at a vehicle with two federal law enforcement officers only after they had passed him. There was no imminent danger. Second, the District Court did not err in following binding Supreme Court precedent in FEOLA in determining that the United States was not required to prove that the defendant knew that the agents were federal law enforcement officers in the vehicle. As to the self-defense issue, if we can just jump in there, isn't there a difference between a District Court's pretrial ruling saying, hey, based on this proffer, I don't want anybody talking about self-defense yet, and a District Court ruling that starts there but also then precludes evidence based on that preliminary ruling once you got to trial? Isn't there a difference between those two? There is a difference between that, Your Honor. However, in the final footnote of the District Court's order, the District Court clearly left open the door for additional evidence to come in beyond the pretrial proffer. But I think what defense is saying is that there was evidence that was precluded, and it was precluded because it would go to a self-defense. But until you hear all the evidence, at the end of all of the evidence after it came in, the District Court could say, hey, no, my ruling still stands after hearing it all. Nobody can argue self-defense. I'm not giving an instruction. But it seems to me there's an argument anyway that it's premature to stop the evidence from coming in in the first instance. And I understand that, Your Honor. However, the court did not actually limit the defense in any way from presenting evidence outside the presence of the jury. We had multiple witnesses testify outside the presence of the jury, and they were given ample opportunity to present whatever evidence they wanted to the District Court for the court to reconsider during the midst of trial. But we had the jury already in place, and the District Court allowed the defense to continue to proffer evidence to it, submit stacks of paper, present witnesses, and even those proffers still didn't meet their threshold. Well, how about this? Maybe it wouldn't reach the threshold of self-defense, but was there also an independent ruling that it just wasn't relevant or it was otherwise prejudicial? Because it sort of seems, again, there's put on the evidence, then you figure out whether it amounts to self-defense. But unless the evidence is otherwise inadmissible as irrelevant, prejudicial, hearsay, something like that, were there separate rulings that excluded the testimony or the additional proffered evidence other than, no, that just goes to self-defense? There were a few different pieces of evidence that were dealt with differently. First, there were a number of police reports and incident reports that the defense proffered that really were irrelevant unless a self-defense instruction came into play, and even then, I still would argue that they were not relevant. And so all those incidents that had nothing to do with Omar, that were just random things that had happened on that road, really had no bearing on the case, and so those were not relevant. But with respect to the defense's argument that they were not precluded to let the defendant kind of tell the full story about what happened with Omar, that's not accurate. The defense tried to limit the testimony of Mr. Davidson, but he got to testify and he got to tell his story about what happened that day and his fear and that he believed that he was in danger. But then he even changed his story during the middle of, whenever he testified at trial, from the pretrial proffer, and he further damaged his chances at self-defense because pretrial, he's saying that he shot at the bumper intentionally, and then he gets to trial and he says, well, I didn't even mean to shoot at the bumper. I was trying to shoot at the ground. The gun kicked up, and that's even farther away from self-defense whenever he's saying, essentially, I accidentally hit the bumper. And so whenever you look at the defendant's testimony, he was given every opportunity to explain the full scope of his state of mind at the time he discharged those shots. But as to the court's prior points, there was no eminence here. He admitted from day one that the first time he fires a shot is when the car is past him. You cannot shoot at the back of a car and call it self-defense. That's just not how self-defense works. And the district court properly recognized that and excluded the defense even giving the defendant every benefit of every inference here. The district court was very clear that he was giving the defendant every benefit, and even then he did not meet the requirements of self-defense. With respect to the defendant's argument that they were precluded from putting on status of the road, that's also not accurate. The defense thought about putting that witness on in front of the jury and ultimately opted, which is very clear from the record, ultimately opted not to put that evidence on because I suspect, kind of based on some of the comments during the course of the trial, they didn't want the potential that the district court might instruct them on Arkansas law, which clearly says that a private road is a road that anyone can drive down. And so there was no trespass, there was no indication that the agents were precluded in any way from driving down that road. What about the instruction in the, I'm going to say middle of the trial, it wasn't the middle, but during trial where the district court told the jury you can't consider self-defense. And again, I can see that coming at the final jury instructions, but before all the evidence comes in, was that too early? No, Your Honor, we'd already had any number of proffers from the defense, and at that point, whenever the district court gave the instruction that you're instructed as a matter of law, this self-defense is not a defense in the case. The testimony you've heard can be considered for you for other purposes regarding intent, but not for self-defense. The district court was simply trying to make it clear that the jury was able to consider all the evidence the defense chose to put on about the defendant's intent, but you could not essentially nullify and apply self-defense when it did not legally meet the threshold required by this court and by other courts. And so whenever you look at all of the evidence that was presented, the defense was not in any way hamstrung. They were precluded from arguing about it and talking about it in the opening. They couldn't talk about it in court ire, but that is something that's very common whenever it is unclear whether or not a particular instruction or certain evidence is going to come in. And so there was no error by the district court in its pretrial ruling. It essentially followed the Supreme Court's guidance in Bailey that it is important for the district court to limit testimony and evidence from going to the jury that is irrelevant whenever the defense can't meet its burden and establish the requirements of a justification defense. And this court's also held the same thing in the Miles case, that essentially a pretrial determination is proper in that instance. But again, the district court left the door open for the defense to attempt to put on evidence. No, the entire statement of the defendant was not played to the jury, but that is true in most trials. The government's not required to play the entire statement of a defendant if it's recorded. And so the defendant got up and told his story when he testified later on, which he was permitted to do. With respect to the arguments about how quickly all this occurred and the eminence, the defense proffered to the district court that it was nowhere near 30 miles an hour, the speed at which this vehicle was traveling. Essentially, they estimated that it was, I think, 5 to 10 miles an hour, something like that, and then discussed how bumpy the road was and that it was not even possible for a vehicle to get anywhere close to 30 miles an hour or anything like that. And so whenever you look at the eminence, we have a vehicle that, by all accounts, is past the defendant by the time he raises his shotgun. And there was no indication and no evidence that the SUV reversed or slowed down, turned around, nobody opened the windows. The defendant admittedly said he couldn't see in, couldn't see if there were any weapons. And so there is no eminent threat of harm at the time that vehicle is past. And there's also the defendant's own testimony is essentially that after he fires the shotgun, he takes minutes to get his second gun out and to shoot that gun, which he claims he shot at the air. And so even taking the defendant's testimony as true, there's no eminent threat of harm at the time he chooses to use that deadly force. And that's the question, is when you choose to shoot that gun, when you choose to exercise and use that deadly force, do you have an eminent threat of harm? And that just didn't happen here. Additionally, the defendant was the initial aggressor in this case. You have him going out and standing in the middle of the road with a long gun and blocking the path of the vehicle, admittedly. That's undisputed. So you're supporting the ruling pretrial, this just as a matter of law is not self-defense. So I'm curious why there was the need for the instruction, in the final instruction you can't consider self-defense, because it sort of seems like either it's so clear that it's not, we don't have the evidence to support even presenting it to the jury, right? That's the conclusion. And so we always presume that the jury reads the instructions, follows the instructions. So what was the need for an additional instruction to say, oh, and by the way, this thing that is not in this case, you don't have to consider? What's the theory behind presenting that? Well, Your Honor, because the district court did permit so much evidence that any lay person, I think, would interpret and wonder about self-defense. The district court thought it was necessary,  that self-defense was not an issue in the case. Self-defense is generally kind of a matter that people become familiar with in their day-to-day lives, but they're not familiar with whether or not you have to meet a certain threshold to have a jury instruction. And so it was important for the district court to make it clear and to clarify what limited purposes the evidence that was presented, that it sounds like self-defense, could be considered for, and it was really simply intent. You can consider it on the intent, but you cannot consider it for self-defense because we're not instructing you that self-defense applies, because it doesn't. The defendant did not meet the threshold burden of production that was required under this case to get that instruction. And so whenever you look at the jury instructions as a whole, they fairly set forth the applicable law in this case. There was no error. The district court was essentially complying with the Federal Rules of Evidence 105. Whenever the court can admit evidence that's admissible for a specific purpose, just like in the 404B context, we tell the jury at the end of the case, you can consider this for knowledge or intent, but you can't consider it for propensity in the defendant's favor. Here, we're clarifying that evidence in the same way for the jury and making sure that they are clear on the law. But for that instruction, I strongly suspect you might see a note from the jury asking about self-defense. And so whenever you look at the evidence in this case and self-defense does not apply, the district court properly applied the law and then instructed the jury about the applicable law and what was and was not at play. And that was why the district court properly instructed the jury on that fact that self-defense is not a defense in the case. With respect to the other jury instruction issues, when you look at the forcibly argument that the district court allegedly erred in not saying the word forcibly before each verb, the 11th Circuit in Gumbs talked about the fact that this is a matter of grade school grammar and that the adverb forcibly clearly applies to each of the listed verbs that follow it. And this court has similarly applied the series qualifier canon in determining that forcibly applies to each of those words. And so it was unnecessary for the district court to put the word forcibly in front of each of those verbs to make it clear that it applied in each instance. With respect to the standard of review on the jury instructions, the United States maintains that the plain error standard review applied because the argument in the brief is different than the argument that was argued at the time of trial. And so the government submits that plain error review applies in that context. When you look at the self-defense issue, I think it's important to note that this court has repeatedly held in Bordeaux, Thomas, and Barrera that force used after the danger has ceased to exist cannot be justified on the basis of a reasonable belief. And so here, when you have these warning shots, there is no self-defense, and the district court properly instructed the jury in that regard. With respect to FIOLA, it is binding Supreme Court precedent. There is no indication that it's been overruled in any way. And while the court in FIOLA indicated that the status of the officers and the defendant's knowledge can be relevant to intent, it is expressly held that that is not an element the government is required to prove. So if the court has no further questions, I surrender the balance of my time. Very well. Thank you. Thank you. Ms. Jones, your rebuttal. Your Honor, I'll go through this quickly. We're not arguing that Davidson was precluded from presenting there was a proffer. We're arguing that the jury was prevented from hearing that evidence. The government cited to a number of cases dealing with the pretrial proffer. All of those proffers deal with affirmative defenses, which are required to be pled beforehand, and the burden of proof is on the defense, which is not what happens in self-defense. It has a burden of production, which is literally the lowest burden. And the court, in its own order, states it's very low. It's not onerous. It could be contradictory. It could be weak. But if it's sufficient to support, then you give the instruction. It's clear. To just sum it up, the court at trial had multiple mentions of concerns over its own rulings. It stated, I certainly expect that I'm not going to be the last word on this case. It went on to state, I can say for both you and the Eighth Circuit, I don't know if I'm right. This is my best guess. Mr. Davidson is a man with no criminal history who was illegally hunting on his own property at the time of this incident, and is in federal prison for 10 years because the court gave its best guess. It guessed wrong. Mr. Davidson pleads with you to correct the error. Thank you. Thank you. Court appreciates both counsel's appearance and arguments today. Case is submitted, and we will issue an opinion in due course.